**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 11-22051-CV-LENARD/O'SULLIVAN

**NESREAN HUSAM SHEHADA, as personal representative of the estate of HUSIEN HUSAM SHEHADA, SAMER SHEHADA, KARLIA KARPEL, and NATASHA JOHNSON,**

Plaintiffs,

v.

**ADAM TAVSS, individually, and THE CITY OF MIAMI BEACH,**

Defendants.
_______________________________________/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ADAM TAVSS'S MOTION FOR SUMMARY JUDGMENT (D.E. 104), DENYING AS MOOT PLAINTIFFS' MOTION TO STRIKE STATEMENT OF FACTS (D.E. 125), AND DENYING DEFENDANT TAVSS'S ORE TENUS MOTION FOR ORAL ARGUMENT**

**THIS CAUSE** is before the Court on Defendant Adam Tavss's Motion for Summary Judgment (D.E. 104, 7/11/12). Plaintiffs Neserean Husam Shehada, Samer Shehada, Karlia Karpel, and Natasha Johnson filed a Response in Opposition (D.E. 120, 8/20/12), and Defendant filed a Reply (D.E. 131, 9/6/12). Also before the Court is Plaintiffs' Motion to Strike portions of Tavss's Statement of Facts filed in support of summary judgment (D.E. 125, 8/22/12). Tavss filed a Response to that Motion (D.E. 130, 9/4/12), and Plaintiffs filed a Reply (D.E. 132, 9/9/12). In addition, at a pretrial conference held March 4, 2013, Tavvs made an ore tenus Motion for Oral Argument on

the pending matters. Having considered the referenced filings, related pleadings, and record, the Court finds as follows.

**I. Facts**

The following facts are either undisputed or taken in a light most favorable to Plaintiffs.

In June 2009, Samer and Husien Husam Shehada were vacationing in Miami Beach with their respective girlfriends, Karlia Karpel and Natasha Johnson. (Plaintiffs' Statement of Material Facts, D.E. 120 ¶¶ 1, 2.)

On the night of June 14, 2009, Samer, Husien, Karlia, and Natasha went to a nightclub in Miami Beach. (Id. ¶ 3.) Samer and Karlia left the nightclub at about 3:30 a.m. (Id. ¶ 4.) Samer and Karlia became involved in an argument on their way out, and Samer pushed Karlia to the ground. (Id. ¶ 5.) Three bystanders saw what happened and began hitting Samer. (Id. ¶ 6.) At some point the altercation ended, and Samer and Karlia proceeded back to their hotel. (Id. ¶ 7.) Husien and Natasha returned to the hotel roughly an hour and a half later. (Id. ¶ 9.)

Back at the hotel, Samer and Husien discussed the altercation and decided to go find Samer's assailants. (Id. ¶ 10.) Husien grabbed a large wooden hanger before they left. (Id. ¶ 11.) Samer took the hanger and placed it under his shirt. (Id.) The hanger was allegedly for self-defense in case they confronted Samer's attackers. (Id.)

Samer and Husien exited the hotel and began walking south on Washington Avenue. (See id. ¶ 12.) They were wearing white t-shirts and blue jeans. (Id.) The hanger created a visible, linear bulge in Samer's shirt. (See Ex. A to Defendant's Reply

in Support of Summary Judgment.) Meanwhile, Karlia and Natasha followed somewhere behind. (Plaintiffs' Statement of Material Facts, D.E. 120 ¶ 12.)

As Samer and Husien walked down the street, several people noticed the bulge in Samer's shirt and began calling the police. (Id. ¶ 13.) Callers reported that two Latino males in jeans and white t-shirts were heading south on Washington Avenue, that one appeared to be concealing a firearm, and that the subjects were moving fast and looked upset. (See id. ¶¶ 13–14; Defendant's Statement of Facts, D.E. 105 ¶ 17.) Officers were dispatched to canvas the area. (Plaintiffs' Statement of Material Facts, D.E. 120 ¶¶ 14–15, 28.)

Miami Beach Police Officer Donald Anderson approached in his cruiser driving south on Washington Avenue. (Id. ¶ 15.) Officer Anderson noticed two people on his left, Samer and Husien, who matched the description of the suspects. (Id.) He then saw Samer and Husien turn around and begin walking northbound. (Id.) Officer Anderson made a U-turn to follow them. (Id.) He drove about twenty feet past them and parked at an angle to the curb. (Id.)

Officer Tavss pulled up in his own patrol car and stopped three or four car-lengths south of Officer Anderson's vehicle. (Defendant's Statement of Facts, D.E. 105 ¶ 26.) Another cruiser approached from the east, heading across a side street just north of Samer and Husien. (See Samer Dep., D.E. 106-3 at 115–19.) Also nearby and responding on foot were Officers Gustavo Blacio and Anthony Loperfido. (Plaintiffs' Statement of Material Facts, D.E. 120 ¶¶ 28–34.)

Officer Anderson exited his vehicle, drew his weapon, and yelled at Samer and Husien twice to show him their hands. (Id. ¶¶ 15, 16.) The record evidence, viewed in a light most favorable to Plaintiffs, reveals that within about two seconds Husien turned west toward Officer Anderson and placed his arms straight up in the air. (Samer Dep., D.E. 106-4 at 203; see also Surveillance Video, Plaintiffs' Ex. 6.) His palms were open and he was not holding anything. (Samer Dep., D.E. 106-4 at 203, 207.) Samer, who had been walking slightly behind and to the right of Husien, walked around to Husien's right side, faced the street, and nudged himself between Husien's right shoulder and a lamppost. (See Samer Dep., D.E. 106-3 at 121; see also Surveillance Video, Plaintiffs' Ex. 6.) Samer testified that "when I heard that verbal command from that officer that's when I put my hands up and turned around, but when I turned -- if I would have just stopped there I would have been directly behind my brother, so I kind of went around my brother so that police officer could see me with my hands up." (Samer Dep., D.E. 106-3 at 121.) Samer came to a stop about three to four seconds after Husien. (See Surveillance Video, Plaintiffs' Ex. 6.) Samer placed his arms in the shape of a "W" with his forearms and hands up. (Samer Dep., D.E. 106-4 at 202.) His palms were open and empty. (Id. at 203.) According to Samer, neither he nor Husien reached for anything or made any furtive movements after raising their arms. (See Samer Dep., D.E. 106-3 at 119–21, 106-4 at 204–07.) Samer's deposition testimony indicates specifically that there was "no way [Husien] could have reached for anything, his arms were up"; that Husien did not "make any movement after his hands were raised to take his hands down to reach for anything before the shooting"; and Samer himself did not "move [his] hands down to

reach for anything after [he] put [his] hands up before the shooting." (Samer Dep., 106-4 at 205–06.) The confrontation was recorded in part by a surveillance camera, but the video quality and vantage point make it difficult to see what exactly Samer and Husien did with their hands and arms in the course of the stop. (See Plaintiffs' Ex. 6.)

Approximately one second after Samer had stopped and situated himself, Officer Tavss discharged his firearm and shot Husien in the left upper arm. (Defendant's Statement of Facts, D.E. 105 ¶ 37; Plaintiffs' Ex. 6.) Husien fell to the ground. (Plaintiffs' Ex. 6.) Samer stumbled back as well but was not harmed. (See Plaintiffs' Statement of Material Facts, D.E. 120 ¶ 44.) Officers then moved in to secure the scene. (Defendant's Statement of Facts, D.E. 105 ¶ 40.)

Husien was brought to the hospital but pronounced dead on arrival. (Id. ¶ 42.) The bullet had entered Husien's chest cavity and perforated his aorta. (Id. ¶ 44.)

Samer was subsequently diagnosed with post-traumatic disorder resulting from the incident. (See Samer Dep., D.E. 106-1 at 43–44.)

Plaintiffs filed this action against Tavss and the City of Miami Beach. (See Second Amended Complaint, D.E. 58 at 1.) Plaintiffs' Second Amended Complaint sets forth two counts against Tavss: Husien's estate asserts a claim under 42 U.S.C. § 1983 for excessive use of force in violation of Husien's Fourth Amendment rights (Count II), and both Husien's estate and Samer Shehada assert a claim of intentional infliction of emotion distress under Florida state law (Count IV). (See id. at 18–19, 21–22.)

## II. Motions

Defendant Tavss now moves for summary judgment. (See Motion for Summary Judgment, D.E. 104 at 1.) Tavss first argues that he is entitled to qualified immunity on Plaintiffs' Section-1983 claim. (Id. at 3.) Tavss claims specifically that his use of force on Husien was not excessive in light of (a) Husien and Samer's suspected possession of a firearm, (b) the apparent threat posed to officers and others, (c) Husien and Samer's alleged failure to obey officer commands after being told to stop and show their hands, and (d) Husien and Samer's alleged furtive movements made before and after raising their arms. (Id. at 6–11.) Tavss thus maintains that the shooting was justified and did not violate Husien's clearly established Fourth Amendment rights. (Id. at 2, 4.) Tavss further argues that Plaintiffs fail to state an actionable claim for intention infliction of emotional distress. (Id. at 12.) Tavss notes that Florida's Wrongful Death Act precludes any cause of action for intentional infliction of emotional distress on behalf of a decedent. (Reply in Support of Motion for Summary Judgment, D.E. 131 at 11.) Tavss further claims that he did not act with malice and his conduct was not outrageous. (Motion for Summary Judgment, D.E. 104 at 12–16.) Tavss argues alternatively that Plaintiffs' emotional-distress claim is barred by various state immunity provisions. (Id. at 104.)

Plaintiffs respond that the record presents genuine issues of fact precluding summary judgment. (Response to Motion for Summary Judgment, D.E. 120 at 23.) Plaintiffs maintain that Husien and Samer fully complied with officer commands in stopping and raising their arms, and that Tavss's use of force was therefore unjustifiable.

(Id. at 26–27.) Plaintiffs further argue that their emotional-distress claim is sustained by both the alleged facts and the applicable state law. (Id. at 33–34.)

In addition, Plaintiffs move to strike portions of Tavss's Statement of Facts filed in support of summary judgment. (See Motion to Strike, D.E. 125 at 1.) Plaintiffs argue that Tavss's Statement of Facts improperly cites an investigative memo prepared by the Florida State Attorney. (Id. at 1–2.) That memo relies on reports prepared by lead detectives, which in turn relay statements of witnesses to the shooting. (Id. at 2.) Plaintiffs argue that the memo, reports, and witness statements constitute inadmissible, multiple hearsay and are not appropriate for consideration on summary judgment. (Id. at 3–4.)

Tavss responds that the subject witness statements were all sworn to and are therefore admissible for summary judgment purposes. (Response to Motion to Strike, D.E. 130 at 4.) Tavss explains that his Statement of Facts references the State Attorney's memo only because the witness statements are audio-recorded and not transcribed, and the memo provides a convenient way to cite to the statements. (Id. at 2.) Tavss has subsequently filed audio recordings of the witness statements on compact discs. (See Supplemental Ex. A–L in Support of Motion for Summary Judgment.)

Finally, at a pretrial conference held March 4, 2013, the Defense moved for oral argument on the foregoing matters. The Defense requested oral argument specifically in light of the Eleventh Circuit's recent unpublished decision, Bodden v. Bodden, No. 12-12933, 2013 WL 674046 (11th Cir. Feb. 25, 2013) (finding no Fourth Amendment violation after reviewing clear video recording of police shooting).

### III. Summary Judgment Standard

Summary judgment is appropriate if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). However, the Court need not adopt the nonmoving party's version of the facts to the extent it is clearly contradicted by a videotape such that no reasonable jury could believe it. Bodden, 2013 WL 674046, at *2 n.2 (citing Scott v. Harris, 550 U.S. 372, 380–81 (2007); Beshers v. Harrison, 495 F.3d 1260, 1262 n.1 (11th Cir. 2007)).

## IV. Discussion

### a. Motion to Strike

With regard to Plaintiffs' Motion to Strike portions of Tavss's Statement of Facts, the Court finds below that Plaintiffs' counterevidence sustains their core claims and raises genuine issues of fact precluding summary judgment. Although the Court grants summary judgment on the emotional-distress claim to the extent that it is asserted by Husien's estate, the basis of that ruling is purely legal and does not turn on any particular disputed fact. For these reasons, the Court denies Plaintiffs' Motion to Strike as moot. See, e.g., Schindler Architects, Inc. v. Fid. & Guaranty Ins. Underwriters, Inc., No. 06-60668-CIV, 2007 WL 781918, at *3 (S.D. Fla. Mar. 13, 2007) ("In light of the Court's conclusion that there are numerous disputed issues of material fact which preclude summary judgment . . . , Plaintiff's Motion to Strike Defendant's Amended Statement of Undisputed Material Facts is denied as moot."); Terry v. Real Talent, Inc., No. 8:09-cv-1756-T-30TBM, 2010 WL 3749224, at *6 (M.D. Fla. Sep. 20, 2010) ("As to the remainder of Defendant's motion to strike, . . . this evidence was not relied upon by the Court to conclude that genuine issues of fact prevent summary judgment in Defendant's favor. Thus, Defendant's motion to strike is denied as moot . . . .").

### b. Section 1983 Claim (Count II)

Title 28, United States Code, Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

> liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 imposes civil liability on any person who, under color of state law, "subjects, or causes to be subjected" a person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." The provision provides civil remedies for deprivations of federal rights elsewhere conferred. Albright v. Oliver, 510 U.S. 266, 271 (1994).

To state a claim under Section 1983, a plaintiff must allege facts showing that a person, under color of state law, deprived her of a right protected under the Constitution or laws of the United States. See Little v. City of North Miami, 805 F.2d 962, 965 (11th Cir. 1986). A person acts under color of state law by acting with power possessed by virtue of the defendant's employment with the state. Edward v. Wallace Cmty. Coll., 49 F.3d 1517, 1522 (11th Cir. 1995).

Under certain circumstances, public officers are entitled to qualified immunity from damages liability under Section 1983. Gomez v. Toledo, 446 U.S. 635, 639 (1980). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). Determining whether a government official is entitled to qualified immunity

involves an assessment of (1) whether the facts that a plaintiff has alleged or shown establish the violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). The relevant inquiry in evaluating whether a right is "clearly established" is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. at 202.

The alleged constitutional violation in this case arises under the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Any claim that law enforcement officers used excessive force in the course of an arrest, investigatory stop, or other seizure of a citizen is analyzed under the Fourth Amendment and its "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989).

An officer's use of force is excessive under the Fourth Amendment if the use of force was "objectively [un]reasonable in light of the facts and circumstances confronting" the officer. Id. at 397. The totality of the circumstances must be considered, and the test of reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. Reasonableness is "judged from the perspective of the reasonable officer on the scene" without the benefit of hindsight. Id. This standard "allow[s] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly

evolving—about the amount of force that is necessary in a particular situation." Id. at 396–97.

Where an officer has probable cause to believe that a suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Tennessee v. Garner, 471 U.S. 1, 11 (1985); see also Garczynski v. Bradshaw, 573 F.3d 1158, 1168 (11th Cir. 2009) ("[T]he escalation into deadly force was justified by Garczynski's refusal to comply with the officers' commands. After identifying themselves, the officers repeatedly ordered Garczynski to show his hands. They also repeatedly commanded him to drop the phone and then, after he raised a gun to his head, to drop his gun. Instead of obeying these commands, Garczynski swung the gun from his head in the direction of the officers, at which point they fired. The officers reasonably reacted to what they perceived as an immediate threat of serious harm to themselves."); Jean-Baptiste v. Gutierrez, 627 F.3d 816, 821 (11th Cir. 2010) ("A suspect of violent crimes who had attempted to elude Officer Gutierrez suddenly confronted Officer Gutierrez. The suspect was armed and posed a threat of serious physical injury to Officer Gutierrez and to citizens in the surrounding residential area. . . . Officer Gutierrez reasonably perceived the situation as an ambush that required the use of deadly force. Regardless of whether Jean–Baptiste had drawn his gun, Jean-Baptiste's gun was available for ready use . . . . Officer Gutierrez's use of deadly force was objectively reasonable.").

On the other hand, deadly force may not be used unless "necessary to prevent [] escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Garner, 471 U.S. at 3.

In Lundgren v. McDaniel, 814 F.2d 600, 603 (11th Cir. 1987), for example, two officers entered a video store suspecting that a burglary was in progress. Id. at 602. The storeowner and his wife, Richard and Margaret, were inside the store sleeping behind a desk. Id. Margaret heard the police officers and woke up Richard. Id. Richard stood up and apparently had a gun either on his person or somewhere close to him. See id. The officers claimed that Richard was holding the gun and fired at them. Id. Margaret claimed that Richard never reached for a gun or fired a shot. Id. Shortly after Richard stood up, the officers fatally shot him. Id. Richard's estate brought a Section-1983 claim alleging excessive use of force by the officers. See id. at 601. A jury found in the estate's favor, see id., and the Eleventh Circuit found sufficient evidence to sustain the verdict, see id. at 603. The Court explained that "[u]nder the version of facts apparently believed by the jury, defendants violated the fourth amendment right to be free from unreasonable seizure when firing at Richard Lundgren." Id. "The jury could have reasonably believed that the officers were neither threatened by a weapon, nor appeared to be threatened by a weapon, nor were fired upon, but rather that the officers without provocation shot at a nondangerous suspect." Id. As for the officers' claim of qualified immunity, the Court held that "shooting a suspected felon who was apparently neither fleeing nor threatening the officers or others was an unreasonable seizure and clearly violated fourth amendment law." Id. at 603; see also Gilmere v. City of Atlanta, 774

F.2d 1495, 1502 (11th Cir. 1985) (officer's fatal shooting of subject sufficient to establish Fourth Amendment violation, even where subject was reported to have pulled a gun on a civilian earlier, attempted to flee officers' detention, reached for officer's revolver, and lunged toward officer), abrogated on other grounds by Graham, 490 U.S. at 395; Acoff v. Abston, 762 F.2d 1543, 1545, 1547–48 (11th Cir. 1985) (officer's shooting of burglary suspect sufficient to establish Fourth Amendment violation, even where subject disobeyed officer commands by running away and was holding objects later identified as a wrench and screwdriver); Pruitt v. City of Montgomery, 771 F.2d 1475, 1483 (11th Cir. 1985) (finding Fourth Amendment violation where "there [wa]s simply no credible evidence that [Officer] Kidd felt in the least bit threatened by Pruitt at the time of the shooting."); Harper v. Perkins, 459 F. App'x 822, 827 (11th Cir. 2012) (affirming denial of qualified immunity where officers allegedly tased subject who "(1) was at least four feet up in a tree with his hands raised, (2) posed no threat to their safety or the safety of others, (3) had no chance, and did not attempt, to flee, and (4) merely put his hands in the air in compliance with the instructions of at least one officer"); Morton v. Kirkwood, --- F.3d ---, No. 12-11436, 2013 WL 471618, at *3 (11th Cir. Feb. 8, 2013) ("Morton testified that he shifted his car to park and raised his hands when he heard Officer Kirkwood shout at him, so, if that account is credited, Kirkwood could not have reasonably believed that he had to shoot Morton to prevent his escape.").

Based on the foregoing, and construing all record evidence in Plaintiffs' favor, the Court finds that Plaintiffs' excessive-force claim is sustained by genuine issues of material fact and withstands Tavss's claim of qualified immunity. There is no question

that the hanger underneath Samer's shirt, along with the numerous 911 calls, generated legitimate suspicion that Samer was concealing a firearm. Police were justified in responding aggressively to the situation and identifying a potential threat to public safety. However, when viewed in a light most favorable to Plaintiffs, the record supports Plaintiffs' allegations that Samer and Husien complied with police orders, that they stopped and raised their arms within seconds of receiving the command from officers, and that their hands were empty. While Tavss maintains that Samer and Husien shuffled around and dug in their waistbands, Samer's deposition testimony indicates Husien and Samer immediately raised their arms after receiving police orders and made no furtive movements before or after. And while the Defense maintains that the surveillance footage of the incident shows Samer and Husien disobeying police commands, the Court has reviewed the surveillance footage and finds it far from conclusive. Unlike in Bodden, for example, in which a dashboard camera produced a "clear" video recording of the incident at issue, see 2013 WL 674046, at *2, the surveillance footage available in this case makes it difficult to see what Samer and Husien did with their hands before raising them. The footage could in fact be viewed as supporting Plaintiffs' contentions that they made no furtive gestures during the stop and complied fully with police orders. Then, about a second after both Husien and Samer were stopped with their arms raised, Officer Tavss shot Husien from several car-lengths away. The Court finds these alleged facts sufficient to support a claim that Tavss's use of force was unjustifiable under the circumstances and violated Husien's Fourth Amendment rights. A trier of fact could conclude that neither Husien nor Samer did anything—and Tavss could not have

reasonably perceived Husien or Samer do anything—that warranted the use of deadly force. The Court further concludes that the rights at issue were clearly established at the time of the Tavss's conduct. In light of the pre-2009 authority referenced above, a reasonable officer in Tavss's position would conclude that use of deadly force on a stationary, cooperating, and empty-handed subject would be unconstitutionally excessive, even if the subject or his associate was suspected to be in possession of a firearm.

On this basis the Court denies Officer Tavss's Motion for Summary Judgment as to Count II.

**c. Intentional Infliction of Emotional Distress (Count IV)**

To prove intentional infliction of emotional distress under Florida law, the plaintiff must establish (1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe. Dependable Life Ins. Co. v. Harris, 510 So. 2d 985, 986 (Fla. Dist. Ct. App. 1987). Behavior claimed to constitute the intentional infliction of emotional distress must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. Ponton v. Scarfone, 468 So. 2d 1009, 1011 (Fla. Dist. Ct. App. 1985).

An actor "is subject to liability if he intentionally or recklessly causes severe emotional distress to a member of such person's immediate family who is present at the time" of the outrageous conduct. M.M. v. M.P.S., 556 So. 2d 1140, 1140–41 (Fla. Dist. Ct. App. 1989) (quoting Restatement (Second) of Torts § 46(2)(a) (1965)). "[W]here, for example, a husband is murdered in the presence of his wife, the actor may know that it is

substantially certain, or at least highly probable, that it will cause severe emotional distress to the plaintiff." Restatement (Second) of Torts § 46 cmt. l. "[T]he decided cases in which recovery has been allowed have been those in which the plaintiffs have been near relatives, or at least close associates, of the person attacked." Id.

Meanwhile, Florida's sovereign-immunity statute extends tort immunity to police officers under certain circumstances:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). Thus, unless an officer acts in bad faith, with malicious purpose, or with willful and wanton disregard of human rights, safety, or property, he or she is immune from personal tort liability. See Willingham v. City of Orlando, 929 So. 2d 43, 47–48 (Fla. Dist. Ct. App. 2006). Florida's justifiable-use-of-force statute further provides that

> A law enforcement officer . . . is justified in the use of any force:
>
> (1) Which he or she reasonably believes to be necessary to defend himself or herself or another from bodily harm while making the arrest;
>
> * * * * *
>
> (3) When necessarily committed in arresting felons fleeing from justice. However, this subsection shall not constitute a defense in any civil action for damages brought for the wrongful use of deadly force unless the use of deadly force was necessary to prevent the arrest from being defeated by such flight and, when feasible, some warning had been given, and:
>
> (a) The officer reasonably believes that the fleeing felon poses a threat of death or serious physical harm to the officer or others; or

> (b) The officer reasonably believes that the fleeing felon has committed a crime involving the infliction or threatened infliction of serious physical harm to another person.

Fla. Stat. § 776.05. Section 776.05 allows an officer to use any force reasonably necessary to defend himself or others from bodily harm while making an arrest. Ansley v. Heinrich, 925 F.2d 1339, 1343 (11th Cir. 1991).

Under Florida's Wrongful Death Act, an estate may not recover damages for pain and suffering endured by the decedent between an alleged wrongful act and death. Fla. Stat. §§ 768.20, 768.21; Martin v. United Sec. Servs., Inc., 314 So. 2d 765, 769–70 (Fla. 1975); Fla. Clarklift, Inc. v. Reutimann, 323 So. 2d 640, 641 (Fla. Dist. Ct. App. 1975). Accordingly, an estate may not maintain a cause of action for intentional infliction of emotional distress on behalf of a decedent. See Metro. Life Ins. Co. v. McCarson, 429 So. 2d 1287, 1291–92 (Fla. Dist. Ct. App. 1983), rev'd on other grounds, 467 So. 2d 277, 279 (Fla. 1985).

Here, again construing the record evidence in Plaintiffs' favor, the Court finds that Samer's claim for intentional infliction of emotional distress raises genuine factual issues precluding summary judgment. If Samer and Husien timely complied with police orders and made no furtive movements following the stop, a trier of fact could conclude that Tavss's immediate fatal shooting of Husien constituted outrageous conduct and caused severe emotional distress to Samer, an immediate family member who was present at the shooting. A factfinder could further infer that Tavss's conduct was malicious or in bad

faith, so as to defeat a claim of sovereign immunity, and that the conduct was not necessary to protect Tavss or others, so as to defeat a justifiable-use-of-force defense.

On the other hand, the Court finds any purported emotional-distress claim by Husien's estate unsustainable. Consistent with Florida's Wrongful Death Act and McCarson, the estate cannot maintain an action for intentional infliction of emotional distress on a decedent's behalf.

On this basis the Court denies Tavss's Motion for Summary Judgment on Count IV as to Samer but grants Tavss's Motion on Count IV as to Husien's estate.

#### d. Ore Tenus Motion for Oral Argument

As the Court finds the subject Motions capable of resolution based on the pleadings and record evidence alone, the Court finds any further argument on these matters unwarranted. The Court therefore denies Tavss's ore tenus Motion for Oral Argument.

### V. Conclusion

It is accordingly **ORDERED AND ADJUDGED** that:

1. Defendant Adam Tavss's Motion for Summary Judgment (D.E. 104, 7/11/12) is **GRANTED IN PART AND DENIED IN PART**.
2. **SUMMARY JUDGMENT** is **DENIED** as to Count II of Plaintiffs' Seconded Amended Complaint.
3. **SUMMARY JUDGMENT** is **DENIED** on Count IV as to Plaintiff Samer Shehada.

4. **SUMMARY JUDGMENT** is **GRANTED** on Count IV as to Plaintiff Nesrean Husam Shehada, personal representative of the estate of Husien Husam Shehada.

5. Plaintiffs' Motion to Strike (D.E. 125, 8/22/12) is **DENIED AS MOOT**.

6. Defendant Adam Tavss's ore tenus Motion for Oral Argument, made March 4, 2013, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of March, 2013.

Joan A. Lenard

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**